UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
FEB 14 2007



| | | |
|---|---|---|
| DANA ADEMA, | ) CIVIL No. 07-4019 | |
| PLAINTIFF, | ) | |
| VS | ) | COMPLAINT |
| FIRST SAVINGS BANK, | ) | |
| DEFENDANT. | ) | |

## JURISDICTION

(1) This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. and the Equal Pay Act of 1963, 29 USCA §206(d).

(2) This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 42 U.S.C. §2000e-5 (f)(3) and 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

(3) Plaintiff Dana Adema is a resident of Niobrara, Nebraska.

(4) At all times pertinent to this action Defendant was operating banks in South Dakota, including a bank in Springfield, South Dakota where Plaintiff was formerly employed.

(5) Adema received a right to sue notice from the EEOC on November 29, 2006.

## COUNT ONE: SEXUAL DISCRIMINATION
(Title VII of the Civil Rights Act)

(6) Adema was employed at the Springfield, SD branch of First Savings Bank since October, 2003 until June 22, 2006.

(7) Adema performed in a manner that met her employer's expectation.

(8) Adema was titled as the Springfield Branch Manager/Commercial Loan Officer.

(9) The Branch President position at the Springfield Branch was not filled during Adema's employment.

(10) Within months of being hired, Adema was assigned to perform the job requirements of the Branch President position.

(11) Adema performed job requirements that were substantially equal to those of the Branch President in terms of skill, effort and responsibility.

(12) First Savings Bank recognized and publicly acknowledged that Adema possessed the skills and qualifications needed to perform the Branch President position.

(13) Adema was required to attend meetings, see to local Branch management and perform the other duties of a Branch President within First Savings Bank and her community.

(14) Adema was held to the same level of accountability and reporting as a Branch President.

(15) When she had to begin attending Branch President meetings, Adema inquired of her supervisors about how she could get the pay and title that accompanied her job duties. She was told that her pay increase was coming.

(16) Adema was terminated without receiving either title or pay increase that reflected her actual job duties.

(17) Adema's termination occurred after she began inquiring about equal pay and after she complained to supervisors about the preferential treatment and "party atmosphere" that male employees enjoyed in the First Savings Bank system.

2

(18)  The reasons given for Adema's termination were inaccurate and pretextual.

(19)  Adema was paid less than similarly qualified males in similar positions.

(20)  Adema was treated differently by Mutchler and several other male managers because of her gender.

(21)  Male employees at First Savings Bank were promoted more often, held a disproportionate number of upper-management jobs and received higher compensation for performing similar job duties as compared to female employees.

(22)  Males at First Savings Bank who were performing similar job duties had the title of Bank President and received higher pay for performing similar job duties to Adema's job.

(23)  Adema had fewer job opportunities than male employees or female employees who began close friendships with or participated in sexual banter in the workplace with the company's male C.E.O., Marvin Mutchler.

(24)  The only two females who were promoted to upper management positions within the South Dakota division of First Savings Bank were women who developed close friendships with or participated in sexual banter in the workplace with the company's male C.E.O., Marvin Mutchler.

(25)  First Savings Bank was aware that female employees were complaining that Mutchler was acting in a manner contrary to company policies regarding sexual harassment and discrimination.

(26)  Female employees were disciplined for discussing Mutchler's compliance with company policies regarding sexual harassment and discrimination.

3

(27) As a result of discriminatory treatment based on her gender, Adema suffered a lost of pay, benefits, employment opportunities and also suffered severe anxiety, humiliation and emotional distress as result of First Savings Bank's discriminatory treatment.

(28) First Savings Bank's actions were willful, reckless and malicious.

## COUNT TWO: EQUAL PAY ACT VIOLATION
(Equal Pay Act, 29 USCA 206(d))

(29) Adema reasserts the allegations set forth in paragraphs 1-28 above.

(30) The Branch President position at the Springfield Branch was not filled during Adema's employment.

(31) Shortly after her hire, Adema was assigned to perform the job requirements of the Bank President.

(32) First Savings Bank recognized and acknowledged that Adema possessed the skills and qualifications actually needed to perform the Branch President job duties.

(33) Adema performed job requirements that were substantially equal to those of the Branch President in terms of skill, effort and responsibility.

(34) Adema was required to attend meetings, see to local Branch management and perform other duties of a Branch President within First Savings Bank and her community.

(35) Adema was held to the same level of accountability and reporting as a Branch President.

(36) When she had to begin attending Branch President meetings, Adema inquired of her supervisors about how she could get the pay and title that accompanied her job duties. She was told that her pay increase was coming.

4

(37)     Adema was terminated without receiving either a title or pay increase that reflected her actual job duties.

(38)     Adema was paid less than similarly qualified males who held similar positions with regard to skill, effort and responsibility.

(39)     Male employees at First Savings Bank were promoted more often, held a disproportionate number of upper-management jobs and received higher compensation for performing roughly equal job does as compared to female employees.

(40)     Males at First Savings Bank who were performing similar job duties had the title of Bank President and received higher pay for performing the same job duties that Adema was performing.

(41)     Adema's termination occurred after she began inquiring about equal pay and after she complained to supervisors about the preferential treatment and "party atmosphere" that certain male supervisors enjoyed in the First Savings Bank system.

(42)     The reasons given for Adema's termination were inaccurate and pretextual.

(43)     As a result of discriminatory treatment based on her gender, Adema suffered a lost of pay, benefits, employment opportunities and also suffered severe anxiety, humiliation and emotional distress as result of First Savings Bank's discriminatory treatment.

(44)     First Savings Bank's actions were willful, reckless and malicious.

## COUNT THREE:  SEXUAL HARASSMENT

(Title VII of the Civil Rights Act)

(45)     Adema reasserts the allegations of paragraphs 1-44.

(46) In October 2005, Adema was required to attend an out-of-town meeting with other First Savings Bank Managers, Bank Presidents and the CEO, Marvin Mutchler.

(47) Prior to an evening business dinner, Mutchler began to drink alcoholic drinks which he billed to Adema's room.

(48) Mutchler continued to drink during a business dinner meeting and required Adema to come sit next to him at the dinner.

(49) During the business dinner meeting, Mutchler told Adema that he had "a plan" for how she could be moved from Branch Manager to Branch President and advised her that he was going to require her to attend Branch President meetings. Mutchler then winked at Adema and began to touch and rub Adema's leg with his hand and rubbed her foot with his foot under the table.

(50) Mutchler's attentions toward Adema were unwelcomed.

(51) Adema physically flinched at Mutchler's physical conduct, moved her chair away from him and then asked to leave the meal.

(52) Other First Savings Bank supervisors noticed Adema's physical discomfort but did not publicly acknowledge it.

(53) Another manager from First Saving Bank escorted Adema back to the hotel as she was afraid to be alone with Mutchler.

(54) Adema avoided contact with Mutchler as much as possible after he touched her under the table and made the comment about how she could get the Bank President title.

(55) The following afternoon in October 2005, Adema was required to attend another of Mutchler's business meetings. This business gathering involved drinking at a

6

golf course and Adema observed as several First Savings Bank managers became intoxicated at Mutchler's behest, including the First Savings Bank HR manager who was making jokes about the company's sexual harassment reporting form being a "slimy little bastard."

(56) Several days later in October 2005, Adema was approached by another First Savings Bank employee who commented about Mutchler's unprofessional behavior toward a certain female employees who seemed to get special treatment from Mutchler in terms of hours, job assignments, training and travel opportunities.

(57) In 2005 and 2006, there were widespread stories among both male and female employees at First Savings Bank who had observed Mutchler's unprofessional behavior toward female employees, including allegations of inappropriate relationships, of inappropriate sexual commentary in the workplace, of an after-hours accident involving the company vehicle, of his inappropriate sexual remark about the sexual orientation of a prominent bank customer and of the workplace benefits enjoyed by his female friends in the workplace in terms of travel, hours and job duties.

(58) On October 25, 2005, Adema reported Mutchler's behavior toward her to her supervisor Bruce Lemmon and advised him that she did not want to attend any more Board meetings if she had to put up with that behavior.

(59) Lemmon told Adema not to report the touching incident by Mutchler to the HR Department because the HR manager would only "protect" Mutchler and commented that "people don't realize how many lives are affected" by a sexual harassment report. Lemmon further advised Adema that her loan files were in good shape, to keep up the great job work and that the Bank President job was coming together for her.

7

(60) Adema followed Lemmon's advice, did not report to HR and continued to avoid contact with Mutchler.

(61) Shortly after Adema was married in April of 2006, a male loan officer named Troy Anderson made comments to her about her sex life, alluded that she was having a sexual relationship with another First Savings Bank employee and commented about her being pregnant. Adema expressed being offended and reported Anderson's comments to his supervisor, Cory Worth, who laughed and asked, "Dana, can't you take a joke?"

(62) On April 24, 2006, Adema had to attend a meeting with Mutchler where he singled her out for a public, demeaning commentary about her marital status and her husband's job during a business meeting.

(63) Adema has never heard Mutchler make comments about male employees' marital status or their spouses' jobs.

(64) On April 25, 2006, Adema had to attend a meeting with a Branch President, Bruce Lemmon and another male manager. When Adema indicated that she did not want to go to a bar after the meeting and instead returned to her room, Lemmon called her twice to suggest that she was engaged in a sexual relationship with a male co-worker. Adema was very upset and hung up on him and also reported his comments to the male co-worker.

(65) Lemmon did not make the offensive, sexually-oriented remarks to the male employee.

(66) On April 28, 2006, Troy Anderson again made comments to Adema about being pregnant and her sex life.

8

(67)     Adema reported him to Worth, Lemmon, and several other First Savings Bank managers but was treated as if she were humorless for complaining.

(68)     First Savings Bank permits a work environment were bank managers, bank officers and the CEO make sexually offensive remarks and comments about the sexual lives and sexual orientations of various people associated with the bank including bank employees.

(69)     During April, May and June of 2006, Mutchler and Lemmon became aware that several other female employees in other bank branches were complaining about Mutchler's preferential behavior toward those female employees who agreed to spend private time with him.

(70)     Toward the end of April, Mutchler was advised that female employees were complaining about him and became upset at female employees who he thought were complaining.

(71)     On June 22, 2006, Lemmon and Worth came to visit Adema at her office and told her that they had come to ask for her resignation.

(72)     Adema was shocked and humiliated when Lemmon asked for her resignation.

(73)     Lemmon told Adema that if she resigned it would be easier to find another job, that she would receive her vacation pay and that she could announce her resignation but that if he had to fire her, he would not allow her vacation pay and he would tell the staff that she was fired.

(74)     Adema refused to resign so Lemmon handed her a prepared sheet that said she was fired for cause.

(75)     Adema was constructively discharged from her position.

9

(76)   First Savings Bank does not follow its own policies regarding sexual harassment.

(77)   The conduct of Mutchler, Anderson, Worth and Lemmon during the course of Adema's employment constitutes sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

(78)   As a result of harassing treatment based on her gender, Adema suffered a lost of pay, benefits, employment opportunities and also suffered severe anxiety, fear, humiliation and emotional distress as result of First Savings Bank's discriminatory treatment.

(79)   First Savings Bank's actions were willful, reckless and malicious.

### COUNT FOUR: RETALIATION
(Title VII of the Civil Rights Act)

(80)   Adema reasserts her allegations in paragraphs 1-79.

(81)   Adema was terminated in a constructive discharge within months of refusing the sexual advances of the First Savings Bank CEO Marvin Mutchler.

(82)   Adema was warned by supervisor Bruce Lemmon not to report the CEO's sexual harassment in order to protect her own job and family life.

(83)   Adema lost opportunities for ongoing employment and legitimate job training, networking, travel and promotion because she refused to participate in Mutchler's "plan" for her advancement.

(84)   Adema was constructively discharged as a result of her complaints about sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2000e-5.

(85)   Adema's termination was in retaliation for her protected EEO activity.

(86) Mutchler approved of and orchestrated Adema's termination.

(87) Following her termination, First Savings Bank has continued to retaliate against Adema by mishandling her family's bank accounts, attempting to ruin her business reputation, suggesting that her personal life would be smeared if she proceeded with litigation and "losing" a title to her vehicle in an effort to intimidate her.

(88) As a result of the retaliatory treatment based on her discrimination complaints, Adema suffered a lost of pay, benefits, employment opportunities and also suffered severe anxiety, fear, humiliation and emotional distress as result of First Savings Bank's discriminatory treatment.

(89) First Savings Bank's actions were willful, reckless and malicious.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. For a trial by jury on the merits of her claim;

b. For compensatory damages in such amount as the evidence at trial may show;

c. For other damages, including but not limited to, those damages allowed by 42 U.S.C. §2000 *et seq* , the Civil Rights Act of 1991, Public Law 162-166, and any other pertinent and applicable statute, rule or regulation, whether state or federal.

d. For punitive damages in such an amount as the evidence at trial may show;

e. For costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 12th day of February, 2007.

JOHNSON EKLUND LAW OFFICE

_____
Stephanie E. Pochop
P.O. Box 149
Gregory, SD 57533
Attorney for Plaintiff